JOSEPH BERCHOLZ, Plaintiff, *v.* GUARANTY TRUST COMPANY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, August 9, 1943.

*Leon & Weill* for plaintiff.

*Davis Polk Wardwell Sunderland & Kiendl* for defendant.

KOCH, J. This is the second reargument of the plaintiff's motion for summary judgment. The original motion was denied without prejudice to renewal in the event that the parties to the action could stipulate the facts necessary to a determination of the issues. Thereafter the parties entered into a stipulation which became the basis of the reargument of the original motion. This reargument again resulted in the denial of the plaintiff's application for summary judgment. (*Bercholz* v. *Guaranty Trust Co. of N. Y.,* 179 Misc. 778.) The present application for a second reargument is consented to by the defendant, but only under a new stipulation and agreement, dated June 29, 1943, which is submitted upon this reargument.

On April 28, 1943, at a time subsequent to the first reargument, upon motion of the defendant, this court, by Mr. Justice WASSERVOGEL, granted a stay of proceedings in the action by order providing in part as follows: " Further Ordered that all proceedings upon the part of the plaintiff herein be and they hereby are stayed until six months after the termination of the existing interruption of communications and diplomatic relations between the United States and European France or until the further order of the Court upon a showing of a material change in the existing situation ".

Defendant, however, has waived this stay and, upon the basis of the latest stipulation, consents to this reargument of the original motion.

A brief discussion of the pertinent facts will serve to shed light upon the various questions involved.

In 1938, the plaintiff, a citizen of France, directed the Paris branch of the defendant to purchase securities for him in New York and to hold them in his account. In accordance with his instructions, the said securities were so purchased and have continuously been and still are physically located in New York.

In September of 1939 various measures including laws, and

decrees and regulations thereunder, were duly put into effect in France " for the purpose of conserving capital in the interest of the national welfare in view of conditions brought about by the existing war between France and Germany ". By virtue of these measures, the exportation of capital in any form, including securities, was prohibited unless authorized by the Minister of Finance.

In or about October, 1939, the plaintiff requested the French branch of the defendant to have the securities in New York placed in the name of the French branch in the custody account of said branch at the defendant's head office in New York, and to have the income received thereon credited to the deposit account of said branch at the said head office in New York, such income to be accounted for to the plaintiff by the said branch in French francs subject to taxes and other charges. This request was carried out. Pursuant to the laws and decrees of France in effect in September, 1939, these acts of plaintiff constituted a " repatriation " of the securities involved, and under the same laws and decrees, where securities have been " repatriated ", any act of placing the same under a different control or status is deemed a prohibited exportation or expatriation of capital.

It is stipulated that throughout the above-mentioned period the plaintiff was a French national, domiciled in France and subject, under the law of France, to the provisions of the aforesaid laws and measures, and with particular reference to the said securities held in New York. The plaintiff is now a resident of the United States and has been since August, 1941.

It is further stipulated that from a time prior to the said repatriation of the plaintiff's securities, the said securities have continuously been and still are physically located in New York. Also, solely for the purposes of this motion, the defendant concedes the plaintiff's ownership of the said securities.

Upon the papers resubmitted hereunder and upon the within stipulation, the defendant makes a countermotion for summary judgment dismissing the complaint, and further or other notice of such countermotion is waived by the plaintiff.

In the matter at bar there is a clash of closely conflicting interests. Let us examine this conflict, first with regard to one side and then to the other. For the plaintiff, it may be said in his favor that his ownership of the securities is conceded, at least for the purpose of decision of this motion. He is also a refugee from an invaded country and as such is entitled to such sympathy and consideration as the court can

indulge in consistent with the interests of justice. He comes to a strange land wherein he has previously deposited securities, perhaps with prescience or foreboding of coming need or necessity. When, however, he seeks to obtain his securities, he finds himself confronted with a refusal of their delivery resulting in a lawsuit. There is much in his situation that commends itself to the conscience of the court.

On the other hand, there is much in the defendant's situation to compel the court's consideration. The defendant at first accepted the securities in issue as an outright deposit. Thereafter, however, the plaintiff repatriated them. From the moment of repatriation the securities assumed a character substantially different from that of an out-and-out deposit. One aspect of this new assumption of character was the rights acquired in the securities by the then existing French government. Another aspect was the liability and obligation of defendant to account for and turn over to the French government the said securities on demand in return for the franc equivalent thereof. In view of our present unsettled relations with France, this court cannot say definitely at this time that the defendant will not at some future time, perhaps at the end of European hostilities, be subjected to a demand by the French government then in power to meet and fulfill that obligation or, alternatively, to be faced with a lawsuit or perhaps some form of retaliatory legislation. The deposit in its original character as an outright deposit would properly be the subject of an action in replevin. In its changed character and affected with the new interests herein described it is not properly subject to replevin. The interest of the defendant calls especially for the protection of the court because that interest is the interest of a United States citizen; and even if the equities herein are otherwise equally balanced, which is doubtful at least, the rule of public policy should be applied by the court to tip the scales of justice in favor of the protection of the interests of our own nationals.

The parties hereto agree that under the existing war conditions there is no available method by which the plaintiff can apply to any French government or to the French exchange office for the release of his securities. But, defendant argues, the interruption of communications and relations is one of the unavoidable consequences of war and plaintiff should await the restoration of relations and communications to secure such rights as he may have under French law as recognized in our courts. This contention appears to the court to be a sound one.

The French government, which promulgated these measures in September, 1939, was a government recognized by the United States. The laws and decrees thus put into effect became the laws and decrees of the French State. The enacting government may subsequently have been overthrown as a result of the German invasion or it may have so deteriorated in authority and independence as to be denied recognition by the United States. But this does not mean that the laws of the French State were *ipso facto* abrogated. So far as anything to the contrary appears in the papers submitted herein, the laws validly enacted before the invasion by Germany are still the laws of the French State and will still be the laws of France when the invader is driven out. Let it be assumed that the invader is finally driven out and a new French government installed which is recognized by the United States. If that new French government chooses to regard the measures here involved as existing and should find itself in urgent need of dollar exchange for purposes of rehabilitation, it might very well call upon the defendant's French branch to turn over these securities and accept the franc equivalent for plaintiff's account. In this connection it is stipulated that one of the French measures provides: " Repatriated foreign holdings are subject to requisition in the national interest against payment of the value thereof in French francs at the officially declared rates of exchange."

It must constantly be borne in mind that the plaintiff is still a French national and that the French law is to be applied if that law does not conflict with our own public policy. It might very well be that in many cases similar to this in some respects, but not identical, the law of the situs of the securities would weight the scales of justice heavily in favor of the plaintiff, in view of the stipulation that the plaintiff is conceded to be the owner of the securities involved. But the plaintiff, however, is not aided by any considerations of situs because, by submitting to validly enacted French laws in his capacity as a French citizen, he has, in legal effect, as between himself, the defendant and its French branch and the French government, obligated himself to consider these securities as being, for all purposes of the appropriate French measures, transferred to France.

There remains a final consideration. Paragraph 5 of the stipulation states: " In September, 1939, various measures including laws, decrees and regulations thereunder were duly put into effect in France for the purpose of conserving capital

▅▅▅▅▅▅▅▅▅▅▅▅

in the interest of the national welfare in view of conditions brought about by the existing war between France and Germany ". Then follows a listing of the various measures. Paragraph 5(e) then states: " For the purpose of regulating private fortunes in the interest of the public safety and conserving under the present circumstances all available resources, including foreign exchange and French holdings abroad it is provided that " et cetera. The plaintiff interprets these provisions to mean that the French decrees and other measures were effected for the purpose of conserving capital in the interest of the national welfare to aid France in the prosecution of the war against Germany. With France having been invaded by Germany, he argues that the purpose of the measures is dead and that the said measures should not be given any effect. Defendant, *contra,* argues, and the court agrees, that the purpose of the measures was not solely to aid in the prosecution of the war against Germany, and that, so far as the prosecution of the war is concerned, it is certainly the policy of the United States to enable France to re-enter the war against Germany. But whether or not France engages in any further prosecution of the war, its requirements for postwar rehabilitation, in the way of foreign exchange and other resources, will be stupendous. And even if the conservation measures could be given effect only within the scope of the purposes which prompted their enactment, postwar rehabilitation is obviously within the scope of the stated purpose.

The motion for reargument is granted and upon such reargument plaintiff's motion for summary judgment is denied.

Defendant's countermotion for summary judgment dismissing the complaint is granted without prejudice to the rights of the plaintiff as set forth in the stipulation herein. Settle judgment.